UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

ALPHONZO LEON WRIGHT,

                    Petitioner,                    Case No. 1:08-cv-431

v.                                                 Honorable Robert Holmes Bell

BLAINE C. LAFLER,

                    Respondent.
_____/

## OPINION

This is a habeas corpus action brought by a state prisoner pursuant to 28 U.S.C. § 2254.  Petitioner pleaded *nolo contendere* in the Genesee County Circuit Court to second-degree murder, MICH. COMP. LAWS § 750.317, and possession of a firearm during the commission of a felony (felony firearm), MICH. COMP. LAWS § 750.227b.  On June 21, 2004, Petitioner was sentenced to a prison term of 17 to 40 years on the murder conviction and 2 consecutive years on the felony-firearm conviction.  In his *pro se* petition, Petitioner raises six grounds for relief, as follows:

I.    THE TRIAL COURT ERRED IN DENYING MOTION TO WITHDRAW PLEA WHERE AGREEMENT HAD BEEN REACHED IN THIS AND ANOTHER CASE AND THE COURT IMPOSED SENTENCE EXCEEDING RECOMMENDATION IN THE OTHER CASE.

II.   [PETITIONER] IS ENTITLED TO RESENTENCING WHERE HE WAS [SENTENCED] ON INACCURATELY SCORED GUIDELINES [AND] SUCH A [SENTENCE] VIOLATES STATE AND FEDERAL CONSTITUTIONAL LAW TO BE SENTENCED BASED ON ACCURATE INFORMATION.

III.  INEFFECTIVE ASSISTANCE OF COUNSEL, WHERE COUNSEL GAVE FAULTY ADVICE, FAILED TO MOVE TO HAVE PLEA WITHDRAWN

WHEN THE STATE VIOLATED PLEA AGREEMENT, AND FAILED TO OBJECT TO IMPROPER SCORE OF SENTENCING GUIDELINES.

IV.    PETITIONER WAS DEPRIVED OF EFFECTIVE ASSISTANCE OF COUNSEL ON APPEAL, WHEN APPELLATE COUNSEL FAILED, FOR NO APPARENT STRATEGIC REASON[,] TO RAISE ISSUES THAT [WERE] OBVIOUS AND SIGNIFICANT ON DIRECT APPEAL.

V.    DID THE STATE COURT COMMIT REVERSIBLE ERROR WHEN IT DENIED PETITIONER RELIEF BASED ON NEWLY DISCOVERED EVIDENCE. WAS THIS ERROR COMPOUNDED WHEN THE TRIAL COURT FAILED TO GRANT PETITIONER AN EVIDENTIARY HEARING REGARDING THIS NEWLY DISCOVERED EVIDENCE?

VI.    WAS THE PETITIONER DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL WHEN TRIAL COUNSEL FAILED TO INVESTIGATE AND PRESENT EYEWITNESS TESTIMONY THAT ISAAC WALTON HAD PLANNED TO ROB THE PETITIONER?

(Second Am. Pet. at 6-7, 9-11b, docket #43, Page ID#287-88, 289-94.)  Respondent has filed an answer (docket #13) and a supplemental answer (docket #47) to the petition, stating that the grounds should be denied because they are noncognizable state law claims, are procedurally defaulted, and/or have no merit.  Upon review and applying the AEDPA standards, the Court find that the grounds are either noncognizable or without merit.  Accordingly, the petition will be denied.

## Procedural History

### A.    Trial Court Proceedings

The state prosecution arose from the murder of Isaac Walton on October 31, 2001, in Flint, Michigan.  Petitioner was charged with one count each of open murder, carrying a concealed weapon, being a felon in possession of a firearm, and felony firearm.  Following a preliminary examination on June 10, 2003, he was bound over on all charges.  A supplemental information was filed charging petitioner as a habitual offender, third offense.

- 2 -

Prior to trial, defense counsel filed a discovery motion, a motion to have the case delayed and reassigned back to the original judge, and a motion in limine raising a number of issues. At a hearing held on May 18, 2004, the continuance and reassignment were denied, the discovery issues were resolved by consent, and the court ruled in Plaintiff's favor on most of the issues in the motion in limine, preventing the prosecutor from introducing a variety of evidence:  evidence of Plaintiff's convictions for possession with intent to deliver cocaine that occurred one and one-half years after the offense for which he was being tried; evidence of a 1993 conviction for felonious assault; and evidence of Petitioner's 1995 convictions for discharge of a firearm in an occupied dwelling and felony firearm.  In addition, after the issue was discussed at the hearing, the prosecutor agreed that he would not introduce evidence of gang involvement or autopsy photographs.  (Mot. in Limine Tr. at 17, 24, 30, docket #22.)  The court deferred until trial any decision on the admissibility of graphic photographs.  (*Id.* at 31.)  At the same hearing, defense counsel acknowledged that, in light of current law, he was forced to stipulate to the admission of evidence of the prior convictions, rather than allow the introduction of the specifics of the convictions, but he preserved for appeal the propriety of introducing evidence of prior convictions.  (*Id.* at 32.)  The court agreed to merely allow stipulation to the fact that Petitioner was a felon for purposes of the felon-in-possession offense, as opposed to informing the jury what felony was in issue.  (*Id.* at 33.)  At the end of the hearing, the parties discussed with the court the plea agreement that was on the table at the time, which involved the same terms as those to which Petitioner eventually pleaded, with the exception that, in the earlier agreement, the cap on the sentence minimums for both cases was 25 years.

On May 19, 2004, following selection of the jury and issuance of preliminary instructions, the trial court recessed for lunch. (Tr. at 148, docket #24.) While the court was in recess, the attorneys negotiated a written plea agreement, under which Petitioner agreed to plead *nolo contendere* to second-degree murder and felony firearm, in exchange for dismissal of the open murder, carrying-concealed, and felon-in-possession charges, as well as dismissal of the third-habitual-offender enhancement. (*Id.* at 149.) The plea agreement also included a minimum-sentence cap of 17 years on the murder conviction. In addition, the agreement included a minimum-sentence cap of 18 years on Petitioner's conviction for possession with intent to deliver cocaine, for which Petitioner awaited sentencing before the same judge. The agreement also provided that the sentences for the murder and drug offenses in the two cases would run concurrently, rather than consecutively, as Petitioner would have faced if he had proceeded to trial. (*Id.* at 149-50.) On the basis of the plea agreement, Petitioner waived his rights, allowed the court to use the transcript of the preliminary examination and a copy of the autopsy results to provide the factual basis for the conviction, and pleaded *nolo contendere* to second-degree murder and felony firearm. (*Id.* at 151-52, 158.)

The court outlined the facts introduced at the preliminary examination, which included the testimony of Lionel Turner. Turner testified that, on October 31, 2001 at approximately 6:15 p.m., he parked his car near the door to a store located at Saginaw and Ridgeway streets. His wife was riding in the passenger seat. Because it was Halloween, many people – adults and children – were in or around the store, which was handing out candy. Turner observed two men leave the store and pass in front of his truck. Turner identified one of the men as Petitioner, and he saw Petitioner pull a gun and hold it alongside his leg. When Turner saw the gun, he told his wife to get down on the floor. About 45 seconds later, Turner saw the victim, Isaac Walton, come out of the

- 4 -

store, apparently eating something.  Turner heard the victim say, "What's up?" or "What's going on?"  Turner saw Petitioner step back and begin firing his handgun, which Turner believed was a .45 caliber weapon, at Walton.  Turner believed he heard between six and eight shots, three of which hit the sidewalk or ground.  The last shot hit the victim, and the victim fell and stopped moving.  Turner saw the man who accompanied Petitioner disappear around the corner of the building.  The court noted that the parties had stipulated to the identity of the body, the cause of death, and that Petitioner had a previous felony, making him an unlawful felon in possession of a firearm.  The autopsy report indicated that the victim had died of a gunshot wound to the head.  (*Id.* at 158-59.) The parties offered no further evidence.  (*Id.* at 160.)[1]

Upon review of the evidence taken at the preliminary examination, the court found that the evidence was sufficient to satisfy all elements of the offenses of murder in the second degree and felony firearm.  The court therefore accepted the plea and found Petitioner guilty on both counts. (*Id.* at 160-61.)  The court also indicated that the *nolo contendere* plea would be permitted, because Petitioner represented that he was intoxicated at the time of the incident and had an imperfect recollection of the events.  (*Id.* at 161.)

On June 21, 2004, the court held a sentencing hearing.  At that hearing, both trial counsel and Petitioner himself indicated that they had read the Presentence Investigation Report (PSIR), and defense counsel stated that he had no objections.  (Sentencing Transcript, (S. Tr.) at 3, docket #25.)  The court found that Petitioner had three prior felonies and three prior misdemeanors. It also found that, under the circumstances, it was very fortunate that no one else was injured.

---

[1]Petitioner has not disputed the state court's summary of the facts.  In addition, the Court has reviewed the facts recited by the trial court against the transcript of the preliminary examination (docket #19) and finds no inaccuracies.

- 5 -

Recognizing the plea agreement, the court sentenced Petitioner to not less than 17 or more than 40 years on the murder conviction and 2 years on the felony-firearm conviction, with 415 days' jail credit, in accordance with the agreed-to sentencing cap. (*Id.* at 7-8.) The court indicated its intent to have the sentence run concurrently with that she would impose for the controlled-substance conviction at a hearing scheduled later that same afternoon. (*Id.* at 6.)

On April 26, 2005, nearly a year after his sentence was imposed, Petitioner, through appellate counsel, filed a motion to withdraw his plea, arguing that he had pleaded *nolo contendere* in the instant case in exchange for a sentence cap both in the instant case and in his controlled-substance case, but the court sentenced him in the controlled-substance case to one month more than the 18 years to which he had agreed. The court held a hearing on May 16, 2005. Before the end of the hearing, the court produced an amended judgment correcting the number of months from 217 to 216, in order to conform with both the plea agreement and the judge's original intent. The court, however, refused to allow Petitioner to withdraw his plea, finding that Petitioner's remaining allegations concerning representations by counsel that Petitioner was eligible for an even lower sentence directly conflicted with Petitioner's testimony during the plea hearing and with the plea agreement itself. (Mot. for Reh'g Tr. at 3-7, docket #26.) On June 3, 2005, the court issued its order denying the motion to withdraw the plea. (Pet'r's Br. on Appeal at 5, docket #27; Cir. Ct. Register at 8, docket #18.)

## B.    Direct Appeal

Petitioner appealed as of right to the Michigan Court of Appeals. His brief, which was filed by counsel on June 20, 2005, raised the first issue presented in this application for habeas corpus relief. (*See* Def.-Appellant's Br. on Appeal, docket #27.) By unpublished opinion issued on

August 18, 2005, the Michigan Court of Appeals rejected all appellate arguments and affirmed Petitioner's convictions and sentences.  (*See* 1/24/97 Mich. Ct. App. Opinion (MCOA Op.), docket #27.)

Petitioner filed a pro per application for leave to appeal to the Michigan Supreme Court.  Petitioner raised the same issue presented to and rejected by the Michigan Court of Appeals, together with the issues raised in Grounds II through IV of his habeas petition, respecting alleged sentencing errors and the ineffective assistance of both trial and appellate counsel.  By order entered December 27, 2005, the Michigan Supreme Court denied his application for leave to appeal because it was not persuaded that the questions presented should be reviewed.  (*See* 4/18/07 Mich. Ord., docket #28.)

### C.     Post-conviction relief

On April 28, 2006, Petitioner filed a motion for relief from judgment in the Genesee County Circuit Court, in which he raised Grounds II through IV of his habeas petition, the grounds he presented for the first time in his application for leave to appeal to the Michigan Supreme Court. The trial court ordered the prosecutor to file a response to the motion.  In an order issued on July 14, 2006, the court denied Plaintiff's motion for relief from judgment.  (7/14/06 Cir. Ct. Op., docket #29.)  Petitioner sought leave to appeal to both the Michigan Court of Appeals and the Michigan Supreme Court.  Those courts denied leave to appeal on April 18, 2007 and September 10, 2007. (*See* R. on Appeal to Mich. Sup. Ct., docket #30.)

On May 8, 2008, Petitioner filed his original habeas petition in this action.  After Petitioner filed an amended petition on the form, the Court ordered Respondent to answer and to file the materials necessary under Rule 5 of the Rules Governing Habeas Corpus Cases Under Section

2254.  On March 17, 2009, Respondent filed his brief and the relevant Rule 5 materials.  A few months later, Petitioner filed a motion to hold the petition in abeyance while he returned to state court to exhaust his claims concerning newly discovered evidence.  The Court granted Petitioner's motion on September 3, 2009, thereby staying the case and administratively closing the action until Petitioner had completed the state process to exhaust his claims.  (Docket #35.)

Petitioner filed a second motion for relief from judgment on September 30, 2009. (Cir. Ct. Register, docket #49.)  In his motion, Petitioner raised the claims presented in Grounds V and VI of his habeas petition, respecting the existence of newly discovered exculpatory evidence and the ineffective assistance of counsel in failing to investigate that evidence.  He raised a third claim, involving the ineffective assistance of appellate counsel in failing to raise his other claims on direct appeal.  (Br. on Appeal from First Mot. for Relief, docket #50.)  The trial court denied the second motion for relief on January 5, 2010, holding that the evidence that Plaintiff claimed was newly discovered did not demonstrate that he was actually innocent.  As a consequence, the court held, Petitioner demonstrated neither the good cause nor the actual prejudice required to permit a second motion for relief from judgment under MICH. CT. R. 6.508(D)(3).  (1/5/10 Cir. Ct. Ord., docket #50.) Petitioner sought leave to appeal to the Michigan Court of Appeals, but the application was denied on September 2, 2010, for failure to demonstrate entitlement to relief under MICH. CT. R. 6.508(D). (1/2/10 MCOA Ord., docket #50.)  For the same reasons, the Michigan Supreme Court denied leave to appeal on March 29, 2011.  (3/29/11 Mich. Ord., docket #51.)

### Standard of Review

This action is governed by the Antiterrorism and Effective Death Penalty Act, PUB. L. 104-132, 110 STAT. 1214 (AEDPA).  *See Penry v. Johnson*, 532 U.S. 782, 792 (2001). The

AEDPA "prevents federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law. *Bell v. Cone*, 535 U.S. 685, 693-94 (2002). The AEDPA has "drastically changed" the nature of habeas review. *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001). An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). This Court may consider only the "clearly established" holdings, and not the dicta, of the Supreme Court. *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Bailey*, 271 F.3d at 655. In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts. *Lopez v. Smith*, 135 S. Ct. 1, 4 (2014); *Bailey*, 271 F.3d at 655; *Harris v. Stovall*, 212 F.3d 940, 943 (6th Cir. 2000). Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court. *Greene v. Fisher*, 132 S. Ct. 38 (2011). Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits. *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 132 S. Ct. at 44).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in our cases, or if it decides a case

- 9 -

differently than we have done on a set of materially indistinguishable facts. *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405-06). The court may grant relief under the "unreasonable application" clause "if the state court correctly identifies the governing legal principle from our decisions but unreasonably applies it to the facts of the particular case." *Id.* A federal habeas court may not find a state adjudication to be "unreasonable" "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Williams*, 529 U.S. at 411; *accord Bell*, 535 U.S. at 699. Rather, the issue is whether the state court's application of clearly established federal law is "objectively unreasonable." *Id.* at 410. "[R]elief is available under § 2254(d)(1)'s unreasonable-application clause if, and only if, it is so obvious that a clearly established rule applies to a given set of facts that there could be no 'fairminded disagreement' on the question." *White v. Woodall*, 572 U.S. ___, 134 S. Ct. 1697, 1706-07 (2014) (quoting *Harrington v. Richter*, 562 U.S. 86, 131 S. Ct. 770, 784 (2011)).

Where the state appellate court has issued a summary affirmance, it is strongly presumed to have been made on the merits, and a federal court cannot grant relief unless the state court's result is not in keeping with the strictures of the AEDPA. *See Harrington*, 131 S. Ct. at 784; *see also Johnson v. Williams*, 133 S. Ct. 1088, 1094 (2013); *Werth v. Bell*, 692 F.3d 486, 494 (6th Cir. 2012) (applying *Harrington* and holding that a summary denial of leave to appeal by a Michigan appellate court is considered a decision on the merits entitled to AEDPA deference). The presumption, however, is not irrebuttable. *Johnson*, 133 S. Ct. at 1096. Where other circumstances indicate that the state court has not addressed the merits of a claim, the court conducts *de novo* review. *See id.* (recognizing that, among other things, if the state court only decided the issue based

- 10 -

on a state standard different from the federal standard, the presumption arguably might be overcome); *see also Harrington*, 131 S. Ct. at 785 (noting that the presumption that the state-court's decision was on the merits "may be overcome when there is reason to think some other explanation for the state court's decision is more likely"); *Wiggins v. Smith*, 539 U.S. 510, 534 (2003) (reviewing habeas issue *de novo* where state courts had not reached the question).

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey*, 271 F.3d at 656. This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989). Applying the foregoing standards under the AEDPA, the Court concludes that Petitioner is not entitled to relief.

## Discussion

I.    Withdrawal of Plea: Ground I

In his first ground for habeas relief, Petitioner argues that he was entitled to withdraw his plea of *nolo contendere*, on the grounds that the initial judgment imposed in the controlled-substance case did not conform with Petitioner's plea agreement in the instant case, as it exceeded the agreed sentence by one month. Petitioner admits that the erroneous sentence has since been corrected; he simply argues that he is not merely entitled to the benefit of his bargain, but entitled to change his mind about his bargain, because the trial court erred in sentencing him to one extra month in the original judgment on the drug case.

Plaintiff primarily bases his argument on the prior Michigan Court Rule 6.311(B), which was no longer in effect at the time he moved to withdraw his plea on April 26, 2005.[2]  The rule provided, in relevant part, as follows:

> (B)  Remedy.  If the trial court determines that there was an error in the plea proceeding that would entitle the defendant to have the plea set aside, the court must give the advice or make the inquiries necessary to rectify the error and then give the defendant the opportunity to elect to withdraw the plea. . . .

*Id.* (deleted by amendment eff. Jan. 1, 2005).  Petitioner also quotes *Santobello v. New York*, 404 U.S. 257 (1971), for the proposition that, under established United States Supreme Court precedent, "[w]hen a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled."  *Id.* at 262.  Based on these two arguments, Plaintiff asserts that the trial court did not give him an opportunity to withdraw his plea in the instant case before it imposed a sentence in the controlled-substance case that was greater than allowed under the plea agreement.  He specifically emphasizes the language of the prior state-court rule, which, he contends, mandates that he be allowed to withdraw his appeal.  He also argues that, under Michigan law, the trial court lacked jurisdiction to alter the sentence, because the claim of appeal had already been filed.

A state defendant has no constitutionally guaranteed right to withdraw a guilty plea. *See Carwile v. Smith*, 874 F.2d 382 (6th Cir. 1989).  The only constitutional challenge that a habeas court may entertain with regard to a plea of guilty is that the plea was not entered in a knowing and voluntary fashion under the standards set forth in *Boykin v. Alabama*, 395 U.S. 238 (1969).  A habeas court is restricted to these federal principles, and may not grant habeas relief on the basis of state law

---

[2]The subject matter of the rule is now incorporated into Michigan Court Rule 6.310(C), although the substance of the provision has been amended.

governing the taking or withdrawal of guilty pleas. *Austin v. Jackson*, 213 F.3d 298, 301-02 (6th Cir. 2000) (alleged violation of state law with respect to sentencing is not subject to federal habeas relief); *Riggins v. McMackin*, 935 F.2d 790, 794-95 (6th Cir. 1991). The Sixth Circuit repeatedly has recognized "'that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus.'" *Stumpf v. Robinson*, 722 F.3d 739, 746 n.6 (6th Cir. 2013) (quoting *Bradshaw*, 546 U.S. at 76). Consequently, the state court's determination that Petitioner was not entitled to withdraw his guilty plea under state law is not reviewable in this Court.

However, the federal courts have recognized that the government may not openly breach a plea agreement. *See Mabry v. Johnson*, 467 U.S. 504, 509 (1984) ("[W]hen the prosecution breaches its promise with respect to an executed plea agreement, the defendant pleads guilty on a false premise, and hence his conviction cannot stand[.]"). As the Supreme Court stated in *Mabry*, "'when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, *such promise must be fulfilled*.'" *Id.* at 509 (quoting *Santobello*, 404 U.S. at 262) (emphasis added).

In the instant case, the trial judge expressly and unequivocally held that it was never her intent to violate the plea agreement and that the one-month greater sentence was simply a calculation or typographical error made in translating years into months. (Mot. to Withdraw Plea Tr. at 3-4.) The judge corrected that error by entering an amended judgment of sentence. As a consequence, the promises made to Petitioner have been fulfilled. *Id.* Petitioner has not experienced any prejudice from the clerical error, and he has obtained the full benefit of his bargain. The state

courts' rejection of his claim constituted an entirely reasonable application of established Supreme Court precedent.

II.    Improper Sentence Scoring:  Ground II

Petitioner's second ground for habeas relief challenges the scoring of the sentencing guidelines on two distinct bases.  He first argues that his sentence was imposed in violation of the Due Process Clause, because the trial court relied on inaccurate information in scoring Offense Variables (OVs) 1, 2 and 5.  In addition, Petitioner claims that, in violation of *Blakely v. Washington*, 542 U.S. 296 (2004), the trial court made findings on the sentencing variables in reliance on facts not proven to a jury or admitted by Petitioner in open court, in violation of his Sixth Amendment right to trial by jury.  The arguments will be addressed in turn.[3]

### A.    Accuracy of Guidelines Scoring

Petitioner argues that, in calculating his sentence, the court improperly scored OVs 1, 2 and 5.  Claims concerning the improper scoring of sentencing guidelines are state-law claims and typically are not cognizable in habeas corpus proceedings.  *See Hutto v. Davis*, 454 U.S. 370, 373-74 (1982) (federal courts normally do not review a sentence for a term of years that falls within

---

[3]Respondent suggests that Grounds II and III of the petition are procedurally defaulted because they were not raised on direct appeal.  "If a petitioner does not satisfy the procedural requirements for bringing an error to the state court's attention – whether in trial, appellate, or habeas proceedings, as state law may require – procedural default will bar federal review."  *Magwood v. Patterson*, 561 U.S. 320, 130 S. Ct. 2788, 2801 (2010).  Nevertheless, the United States Supreme Court has held that federal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits.  *See Hudson v. Jones*, 351 F.3d 212, 216 (6th Cir. 2003) (citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997) ("Judicial economy might counsel giving the [other] question priority, for example, if it were easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law."), and *Nobles v. Johnson*, 127 F.3d 409, 423-24 (5th Cir. 1997) (deciding against the petitioner on the merits even though the claim was procedurally defaulted)).  *See also* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.").  Where, as here, the procedural default issue raises more questions than the case on the merits, the Court may assume without deciding that there was no procedural default or that Petitioner could show cause and prejudice for that default.  *See Hudson*, 351 F.3d at 215-16; *Binder v. Stegall*, 198 F.3d 177, 178 (6th Cir. 1999).  The Court therefore will address Petitioner's second and third habeas grounds on the merits.

the limits prescribed by the state legislature); *Austin*, 213 F.3d at 301-02; *Cook v. Stegall*, 56 F. Supp. 2d 788, 797 (E.D. Mich. 1999) (the sentencing guidelines establish only rules of state law). There is no constitutional right to individualized sentencing. *Harmelin v. Michigan*, 501 U.S. 957, 995 (1991); *United States v. Thomas*, 49 F.3d 253, 261 (6th Cir. 1995); *see also Lockett v. Ohio*, 438 U.S. 586, 604-05 (1978).  Moreover, a criminal defendant has "no federal constitutional right to be sentenced within Michigan's guideline minimum sentence recommendations." *Doyle v. Scutt*, 347 F. Supp. 2d 474, 485 (E.D. Mich. 2004); *accord Lovely v. Jackson*, 337 F. Supp. 2d 969, 977 (E.D. Mich. 2004); *Thomas v. Foltz*, 654 F. Supp. 105, 106-07 (E.D. Mich. 1987).

Although state law errors generally are not reviewable in a federal habeas proceeding, a sentence may violate due process if it is based upon material "misinformation of constitutional magnitude." *Roberts v. United States,* 445 U.S. 552, 556 (1980); *see also United States v. Tucker,* 404 U.S. 443, 447 (1972); *Townsend v. Burke,* 334 U.S. 736, 741 (1948).  To prevail on such a claim, the petitioner must show (1) that the information before the sentencing court was materially false, and (2) that the court relied on the false information in imposing the sentence.  *Tucker*, 404 U.S. at 447; *United States v. Polselli*, 747 F.2d 356, 358 (6th Cir. 1984). *Koras v. Robinson,* 123 F. App'x 207, 213 (6th Cir. 2005) (quoting *United States v. Stevens,* 851 F.2d 140, 143 (6th Cir. 1988)).  A sentencing court demonstrates actual reliance on misinformation when the court gives "explicit attention" to it, "found[s]" its sentence "at least in part" on it, or gives "specific consideration" to the information before imposing sentence.  *Tucker*, 404 U.S. at 447.

Petitioner wholly fails to meet the two-part test of *Tucker*.  First, he fails even to argue that the erroneous scores had any impact on his ultimate sentence.  Second, in response to Petitioner's motion to withdraw his plea, the trial court expressly stated that it had not relied upon

the guidelines scoring in setting Petitioner's sentence. Instead, the court held that the scoring of the guidelines was moot, as the court had imposed the sentence to which Petitioner had agreed in exchange for his plea. (7/14/06 Ord. Den. Mot. for Relief, docket #29.)

As the Court earlier discussed, a state court's factual finding is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Lancaster*, 324 F.3d at 429; *Bailey*, 271 F.3d at 656. The trial court's determination was patently reasonable, and Petitioner has offered no evidence to overcome the presumption of correctness. Petitioner received precisely the sentence for which he bargained. In addition, in exchange for his plea, Petitioner received the dismissal of a number of charged offenses, including possible life offenses, and a guarantee that his sentences would run concurrently, rather than consecutively. As a result, any guidelines score based solely on his offenses of conviction would disregard the entire basis for his plea. For both reasons, the state-court decision rested on a reasonable interpretation of the facts and was neither contrary to nor an unreasonable application of clearly established Supreme Court precedent.

## B. *Blakely* Claim

Petitioner argues that the trial court violated his Sixth Amendment rights by not correcting the calculations of his sentencing guidelines reflected in the PSIR, resulting in his sentence being increased on the basis of facts not found by the jury beyond a reasonable doubt or admitted by Petitioner. Petitioner bases his argument on the United States Supreme Court holding in *Blakely v. Washington*, 542 U.S. 296 (2004). *Blakely* concerned the State of Washington's determinate sentencing system, which allowed a trial judge to elevate the maximum sentence permitted by law on the basis of facts not found by the jury but by the judge. Applying the

Washington mandatory sentencing guidelines, the trial judge found facts that increased the maximum sentence faced by the defendant. The Supreme Court found that this scheme offended the Sixth Amendment, because any fact that increases or enhances a penalty for the crime beyond the prescribed statutory maximum for the offense must be submitted to the jury and proven beyond a reasonable doubt. *Blakely,* 542 U.S. at 301 (citing *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000)).

Unlike the State of Washington's determinate sentencing system, the State of Michigan has an indeterminate sentencing system in which the defendant is given a sentence with a minimum and a maximum term. The maximum sentence is not determined by the trial judge, but is set by law. *See People v. Drohan,* 715 N.W.2d 778, 789-91 (Mich. 2006) (citing MICH. COMP. LAWS § 769.8). Only the minimum sentence is based on the applicable sentencing guideline range. *Id.*; *and see People v. Babcock*, 666 N.W.2d 231, 236 n.7 (Mich. 2003) (citing MICH. COMP. LAWS § 769.34(2)). The Sixth Circuit authoritatively has held that the Michigan indeterminate sentencing system does not run afoul of *Blakely*. *See Chontos v. Berghuis*, 585 F.3d 1000, 1002 (6th Cir. 2009) (affirming district court's dismissal of prisoner's claim under *Blakely v. Washington* because it does not apply to Michigan's indeterminate sentencing scheme); *Tironi v. Birkett*, 252 F. App'x 724, 725 (6th Cir. 2007). Therefore, the state court's failure to correct the guidelines calculations set forth in the PSIR was not contrary to federal law clearly established by the United States Supreme Court.

Moreover, as previously discussed, the trial court squarely held that, in imposing its sentence, it had not relied on the guidelines calculations of the PSIR, but instead sentenced Petitioner based on his own plea agreement. It therefore concluded that the guideline calculations were irrelevant to Petitioner's sentence and that Petitioner was not prejudiced by any error in the

calculation.  That determination was a patently reasonable determination of both the facts and the law.  28 U.S.C. § 2254(d).

For both reasons, Petitioner's *Blakely* claim is meritless.

III.    Denial of New Trial for Newly Discovered Evidence:  Ground V

In Ground V of the petition, Petitioner asserts that he became aware of newly discovered evidence from Nigel Marx.  On July 13, 2009, five years after trial began and Petitioner decided to enter his plea, Marx signed an affidavit saying that, earlier on the day of the shooting, Isaac Walton had discussed robbing Petitioner.  Petitioner now contends that Marx's evidence, if known to the defense, would have permitted Petitioner to support a claim of self-defense at trial. He therefore contends that, because the full investigative facts were not before him, his plea was not voluntary or intelligent.  He argues that he was entitled to an evidentiary hearing and, ultimately, relief from judgment.

In its order denying Petitioner's second motion for relief from judgment, the trial court held as follows:

> On September 30, 2009, Defendant filed a second Motion for Relief From Judgment. Defendant grounds his motion on "newly discovered evidence" naming Nigel Marx as a witness with exculpatory evidence. Defendant contends that he was deprived of his right to effective assistance of counsel when his trial attorney failed to investigate and present eyewitness testimony.

> Defendant has attached a document purporting to be the affidavit of Nigel Marx dated July 13, 2009. In the affidavit, Nigel Marx acknowledges that he was not present at the party store when Defendant shot victim Isaac Walton. His proffered testimony would be that he was with the victim prior to the murder, and that they had discussed robbing Defendant Wright.

***

- 18 -

As Defendant Wright asserts that the alleged affidavit of Nigel Marx supports his claim of new evidence and this entitles him to file a second motion for relief from judgment. The Court will be liberal in reviewing his second motion for relief from judgment. In the "affidavit," paragraph 1, Marx alleges that he was present when a group of individuals discussed planning a robbery. However, Marx does not allege that he was present during any robbery. Indeed, to the contrary, he asserts he "just decided to leave because [he] didn't want no part of what was going down." (Affidavit of Nigel Marx paragraph 2).

Defendant contends that this "new evidence" supports his claim that he "acted out of fear for his life and in self defense." However, it has been over eight years since the murder of Isaac Walton. Defendant Wright has never before asserted a claim of self defense. Nor does he assert self defense in his motion. At his plea, Defendant claimed he had no memory of the events due to intoxication.

The testimony of Nigel Marx would at best corroborate a possible self defense claim. The issue of self defense could have been decided by the jury if defendant had not decided to plead. Defendant's plea of nolo contendere for the reason of lack of memory due to intoxication waived his ability to challenge the factual basis for his plea.

Defendant's proffered "new evidence" does not establish defendant's factual innocence. Furthermore, defendant was provided with a copy of a police report containing the name and statement of Nigel Marx prior to his plea. Defendant, using reasonable diligence, could have discovered Mr. Marx, and produced him as a witness at trial. Thus, this evidence is far from "newly discovered" evidence.

Defendant has failed to demonstrate both good cause for failure to raise the issues included in Nigel Marx' alleged affidavit previously, and actual prejudice resulting from the alleged irregularities that support his claim for relief. MCR 6.508(D)(3). Defendant could have raised this issue in his prior appeal to the Michigan Supreme Court, and in his prior motion for relief from judgment.

(1/6/10 Cir. Ct. Ord. at 2-4, docket #50.)

The state court's decision was neither contrary to nor an unreasonable application of established Supreme Court precedent. To the extent that Petitioner is claiming that the trial court failed to apply the proper state-law standard for granting a new trial or evidentiary hearing, he fails to raise a cognizable federal claim. It is not the province of a federal habeas court to re-examine

- 19 -

state-law determinations on state-law questions.  *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *Estelle v. McGuire*, 502 U.S. 62, 68 (1991).  The decision of the state courts on a state-law issue is binding on a federal court.  *See Wainwright v. Goode*, 464 U.S. 78, 84 (1983).

Moreover, Petitioner's argument that the evidence was newly discovered is wholly unpersuasive.  As the trial court held, Petitioner possessed a copy of the police report containing Marx's name prior to trial.  Petitioner had ample opportunity to discover the content of Marx's evidence long before 2009.

Further, to the extent that Petitioner asserts that his plea was involuntary because he was unaware of Knox's testimony, his claim is without merit.  The test for determining a guilty plea's validity is "'whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'"  *Hill v. Lockhart*, 474 U.S. 52, 56 (1985) (quoting *North Carolina v. Alford*, 400 U.S. 25, 31 (1970)).  Courts assessing whether a defendant's plea is valid look to "all of the relevant circumstances surrounding it," *Brady v. United States*, 397 U.S. 742, 749 (1970), and may consider such factors as whether there is evidence of factual guilt.  The defendant must have notice of the nature of the charges against him.  *Henderson v. Morgan*, 426 U.S. 637, 645 n.13 (1976).  The plea must be entered "voluntarily"; it must not be the product of "actual or threatened physical harm, or . . . mental coercion overbearing the will of the defendant" or of state-induced emotions so intense that the defendant was rendered unable to weigh rationally his options with the help of counsel.  *Brady*, 397 U.S. at 750; *Machibroda v. United States*, 368 U.S. 487, 493 (1962) ("A guilty plea, if induced by promises or threats which deprive it of the character of a voluntary act, is void.").  The defendant must understand the consequences of his plea, including the magnitude of the sentence he is facing and the nature of the constitutional protections he is

waiving. *Henderson*, 426 U.S. at 645 n.13; *Brady*, 397 U.S. at 755; *Machibroda*, 368 U.S. at 493

("Out of just consideration for persons accused of crime, courts are careful that a plea of guilty shall

not be accepted unless made voluntarily after proper advice and with full understanding of the

consequences.") (internal quotations and citation omitted).   If a prosecutor's promise is illusory,

then a plea is involuntary and unknowing.  *United States v. Randolph*, 230 F.3d 243, 250–51 (6th

Cir. 2000).  However, where a defendant is "fully aware of the likely consequences" of a plea, it is

not unfair to expect him to live with those consequences.  *Mabry v. Johnson*, 467 U.S. 504, 511

(1984).  Under long-established Sixth Circuit authority, a petitioner's responses to the trial judge,

given under oath at the plea hearing, preclude his subsequent assertion that he entered into a plea in

reliance on different terms.  *See Smith v. Anderson*, 632 F.3d 277, 282 (6th Cir. 2011) (citing *Baker

v. United States*, 781 F.2d 85, 90 (6th Cir. 1986) (holding that, where the trial court inquires about

the terms of a plea bargain and receives confirmation from the prosecutor, defense counsel, and the

defendant about those terms and the absence of other promises, "the defendant is bound by his

statements in response to that court's inquiry")).  A plea-proceeding transcript which suggests that

a guilty or no contest plea was made voluntarily and knowingly creates a "heavy burden" for a

petitioner seeking to overturn his plea.  *Garcia v. Johnson*, 991 F.2d 324, 326–28 (6th Cir. 1993).

Here, the plea transcript reflects that the prosecutor recited on the record the terms

of the previously discussed plea agreement and indicated that a written agreement had been signed

by both defense counsel and Petitioner.  (Tr. I at 149.)  Asserting that he had a limited  memory of

the events due to intoxication, Petitioner agreed to allow the court to use the facts presented at the

preliminary examination and the autopsy report to serve as the factual basis for the offenses of

second-degree murder and felony firearm.  (*Id.* at 150-51.)  In addition, defense counsel admitted that

the factual record was sufficient to support the plea. (*Id.* at 152.) The court carefully explained to Petitioner the substance of the two charges and the elements that the prosecution was required to prove. (*Id.* at 153.) Petitioner, under oath, acknowledged that he understood both the nature of the charges and that the maximum sentence for the murder charge was life imprisonment and the maximum for felony firearm was two years, which would run consecutively. (*Id.* at 154-55.) Petitioner also acknowledged that he was waiving his rights to trial, to a jury, to the presumption of innocence, to proof beyond a reasonable doubt, to present witnesses, to question witnesses, to remain silent, to not have his silence used against him, and to testify. (*Id.* at 155-56.) In addition, Petitioner expressly acknowledged that, by accepting the plea, he waived his right to claim on appeal that his plea was the result of some promise or threat that was not disclosed to the court on the record in the plea proceedings. He also denied that anyone had made him promises or had threatened him to cause him to plead guilty. He stated that he was making a free choice in entering a plea of no context to second-degree murder and felony firearm. (*Id.* at 157-58.) Petitioner's responses to the plea agreement indicate that he was fully aware of the consequences of his plea and that the plea was voluntary and intelligent. *See Mabry*, 467 U.S. at 511. He therefore has waived his right to challenge the factual basis of the plea. *Smith*, 632 F.3d at 282.

Moreover, Petitioner offers no argument or evidence showing that he would not have pleaded guilty if he had been aware that Marx could testify about the victim's intent to rob Petitioner at some time. Instead, he simply argues that, with the benefit of hindsight, he might have taken the case to the jury, because Marx could testify that the victim had intended to rob Petitioner and Petitioner might have been able to prove self-defense. Such an argument is at odds with the record evidence. As the trial court noted, Petitioner never claimed self-defense before proceeding to trial.

Given that Marx did not witness the events, his testimony could not itself prove self-defense or actual innocence; it could only prove that Petitioner might have had a reason to want to shoot the victim.  Petitioner's knowledge that the victim might in the future rob him provides no excuse for Petitioner to shoot him.  Under Michigan law, "[t]he killing of another person is justifiable homicide if, under all the circumstances, the defendant honestly and reasonably believes that he is in imminent danger of death or great bodily harm and that it is necessary for him to exercise deadly force.  As part and parcel of the 'necessity' requirement that inheres in every claim of lawful self-defense, evidence that a defendant could have safely avoided using deadly force is normally relevant in determining whether it was reasonably necessary for him to kill his assailant."  *People v. Riddle*, 649 NW2d 30, 46-47 (Mich. 2002).  Petitioner has never claimed either that he was in imminent danger or that it was necessary to use deadly force.  In fact, his actions in waiting outside the store with a gun drawn wholly undermine any suggestion that he had no choice but to shoot the victim.  As a result, the argument and evidence presented to the trial court did not warrant or require an evidentiary hearing and did not provide a basis for reconsidering the plea.

In sum, the state court's rejection of Petitioner's fifth habeas ground rested on a completely reasonable determination of the facts, and it was neither contrary to nor an unreasonable application of clearly established Supreme Court precedent.

## IV.   Ineffective Assistance of Trial Counsel:  Grounds III & VI

In Ground III of his petition, Petitioner argues that he is entitled to relief on habeas review because his trial attorney failed to move to withdraw the plea, misrepresented the sentence Petitioner would face in the drug case, failed to object to the sentence and sentencing-guidelines scoring, and provided faulty advice concerning the plea decision.  In Ground VI, Petitioner asserts

that his trial attorney rendered ineffective assistance when he failed to investigate and discover the testimony of Nigel Marx.

In *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984), the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel.  To establish a claim of ineffective assistance of counsel, the petitioner must prove:  (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome. A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689.  The defendant bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy.  *Id.* (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also Nagi v. United States*, 90 F.3d 130, 135 (6th Cir. 1996) (holding that counsel's strategic decisions were hard to attack).  The court must determine whether, in light of the circumstances as they existed at the time of counsel's actions, "the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690.  Even if a court determines that counsel's performance was outside that range, the defendant is not entitled to relief if counsel's error had no effect on the judgment.  *Id.* at 691.  Moreover, as the Supreme Court repeatedly has recognized, when a federal court reviews a state court's application of *Strickland* under § 2254(d), the deferential standard of *Strickland* is "doubly" deferential.  *Harrington v. Richter*, 131 S. Ct. 770, 788 (2011) (citing *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)); *see also Burt v. Titlow*, 134 S. Ct. 10, 13 (2013); *Cullen v. Pinholster*, 131 S. Ct. 1388, 1403 (2011); *Premo v. Moore*, 131 S. Ct. 733, 740 (2011).  In those circumstances, the question before the habeas court is "whether there is

- 24 -

any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.*; *Jackson v. Houk*, 687 F.3d 723, 740-41 (6th Cir. 2012) (stating that the "Supreme Court has recently again underlined the difficulty of prevailing on a *Strickland* claim in the context of habeas and AEDPA . . .") (citing *Richter*, 131 S. Ct. at 786).

The Supreme Court applies the two-part *Strickland* test to challenges to guilty pleas based on ineffective assistance of counsel. *Hill*, 474 U.S. at 58. Regarding the first prong, the court applies the same standard articulated in *Strickland* for determining whether counsel's performance fell below an objective standard of reasonableness. *Id.* In analyzing the prejudice prong, the focus is on whether counsel's constitutionally deficient performance affected the outcome of the plea process. "[I]n order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.* at 59.

### A.    Failure to Move to Withdraw

In his third habeas ground, Petitioner makes several arguments. His first argument – that trial counsel was ineffective for failing to move to withdraw the guilty plea – fails because Petitioner demonstrates no prejudice. Although trial counsel did not move to withdraw the plea, appellate counsel did so prior to filing the direct appeal. At the hearing on the motion by appellate counsel, the trial court acknowledged that a clerical error had resulted in a one-month addition to Petitioner's sentence in the drug case, and it acted swiftly to issue an amended judgment. In other words, the sentence Petitioner ultimately received was identical to the sentence to which he agreed at the time he pleaded guilty. Further, Plaintiff has identified no way in which the decision would have been otherwise had the motion been filed by trial counsel rather than appellate counsel.

Petitioner therefore fails to demonstrate that he suffered any prejudice as the result of trial counsel's decision not to file a motion to withdraw the plea.

### B.       Undisclosed Sentencing Promises

In the second argument of Ground III, Petitioner suggests that trial counsel somehow misrepresented facts, rendering his plea involuntary. Petitioner argues that his attorney told him that he faced a minimum sentence of 13 years or less in the drug case and that he therefore would not gain a great benefit by taking the risk of going to trial on the first-degree murder charge.

Where a guilty plea is entered upon the advice of counsel, "the voluntariness of the plea depends on whether counsel's advice was within the range of competence demanded of attorneys in criminal cases." *Hill*, 474 U.S. at 58 (citing *McMann v. Richardson*, 397 U.S. 759, 771 (1970)). As earlier discussed, a petitioner's responses to the trial judge, given under oath at the plea hearing, preclude his subsequent assertion that he entered into a plea in reliance on different terms. *See Smith*, 632 F.3d at 282; *Baker*, 781 F.2d at 90. In response to the court's detailed questions, Petitioner testified that he understood the plea agreement, understood the rights he was waiving and understood the sentence to which he had agreed in each case. He also denied that promises had been made to him, other than those stated in the plea agreement. (Tr. I at 150-58.) As a result, Petitioner's suggestion that his attorney may have made other promises is barred. *Smith*, 632 F.3d at 282.

Moreover, the mere fact that Petitioner felt like he had few choices but to plead guilty does not render his plea agreement involuntary. As discussed, Petitioner faced multiple serious charges and sentences, including a life sentence without parole if he was convicted of first-degree murder. He also faced being sentenced as a third habitual offender and to having the sentences in

- 26 -

the two cases run consecutively.  In exchange for pleading guilty to the lesser offense of second-degree murder, two charges were dismissed, as was the habitual-offender notice.  Petitioner also received concurrent sentencing in both cases.  Because the plea conferred substantial benefits, it can in no way be considered illusory.  As a result, defense counsel's recommendation to plead guilty constituted entirely reasonable performance.  *See Hill*, 474 U.S. at 58 (citing *McMann*, 397 U.S. at 771).

In addition, Petitioner has not even attempted to demonstrate the requisite prejudice under *Hill*.  While Petitioner strenuously argues that he should have been able to change his mind about pleading guilty after he was inaccurately sentenced in the drug case, he fails to argue, much less show, that he would not have pleaded guilty at the time he entered into his plea agreement had anything about defense counsel's representation been different.  He merely claims that, had he gone to trial in the murder case, he most likely would have been acquitted or convicted of a lesser offense, due to his intoxication and hypothetical self-defense.  Absent a showing that he would not have pleaded guilty at the time the plea agreement was offered, Petitioner cannot demonstrate that he was prejudiced by counsel's actions.  *Hill*, 474 U.S. at 59.

## C.    Improper Negotiation of Both Sentences

In the third complaint about trial counsel's performance discussed in Ground III, Petitioner contends that his attorney should not have been permitted to negotiate a plea agreement governing both cases, because counsel did not represent Petitioner in the drug case.  Petitioner wholly fails to identify either error by the attorney or prejudice.  The Supreme Court has never held that an attorney is ineffective when he or she negotiates a plea agreement involving multiple cases and attorneys, provided he obtains the defendant's consent.  Petitioner expressly consented to the

substance of the plea agreement, including the sentencing caps for both cases.  As a consequence, the state court's rejection of his argument is neither contrary to nor an unreasonable application of clearly established Supreme Court precedent.

Moreover, Petitioner's cases were pending before the same judge.  The bargain provided enormous benefit to Petitioner in both cases, as the sentences would have been served consecutively in the absence of a plea agreement.  Petitioner was fully aware of and agreed to plead nolo contendere with knowledge of all of the facts and circumstances.  In these circumstances, Petitioner cannot demonstrate that he suffered prejudice.

### D.      Failure to Interview Nigel Marx

In his sixth habeas ground, Petitioner asserts that his attorney rendered ineffective assistance by failing to investigate the information possessed by Nigel Marx, which, he argues, could have allowed Petitioner to defend the case on a theory of self-defense.

As previously discussed, Petitioner's plea was knowingly, voluntarily, and intelligently made.  In light of all the circumstances, Petitioner has neither alleged nor demonstrated that Marx's testimony was materially relevant to or had any impact on Petitioner's decision to plead guilty.  Even assuming that counsel did not interview Marx, Marx possessed no information that would have exculpated Petitioner or justified his shooting of Walton.  Moreover, as the Court again previously discussed, Petitioner at no time has stated that he would have continued with the trial had he been aware of Marx's testimony.  He therefore fails even to allege the requisite prejudice under *Hill*,  474 U.S. at 59.

As a consequence, especially in light of the double deference owed on habeas review, the state court reasonably rejected all of Petitioner's claims that trial counsel rendered ineffective assistance.

V.    Ineffective Assistance of Appellate Counsel

In his fourth ground for habeas relief, Petitioner argues that his appellate attorney provided ineffective assistance of counsel when he failed to raise on direct appeal Grounds II and III of his petition, which were presented to the state courts for the first time in Petitioner's motion for relief from judgment.  Specifically, Petitioner claims that his sentencing challenge under *Blakely*, 542 U.S. 296, was clearly meritorious and that trial counsel was patently ineffective in failing to object to *Blakely* error during sentencing.  He therefore contends that appellate counsel's failure to raise these grounds on direct appeal caused the claims to be procedurally defaulted, thereby resulting in their being given only discretionary review in the state courts.  He argues that the ineffective assistance of appellate counsel serves as cause excusing his procedural default.

An appellant has no constitutional right to have every non-frivolous issue raised on appeal.  "'[W]innowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." *Smith v. Murray*, 477 U.S. 527, 536 (1986) (quoting *Jones v. Barnes*, 463 U.S. 745, 751-52 (1983)).  To require appellate counsel to raise every possible colorable issue "would interfere with the constitutionally protected independence of counsel and restrict the wide latitude counsel must have in making tactical decisions."  *Strickland*, 466 U.S. at 688.  As the Supreme Court recently has observed, it is difficult to demonstrate that an appellate attorney has violated the performance prong where the attorney presents one argument on appeal rather than another.  *Smith v. Robbins*, 528 U.S.

- 29 -

259, 289 (2000). In such cases, the petitioner must demonstrate that the issue not presented "was clearly stronger than issues that counsel did present." *Id.*

In evaluating Grounds II and III of the petition, this Court did not rely on any procedural default caused by Petitioner's failure to raise the claims on direct appeal. Instead, the Court rejected the claims because they lacked merit. Where a claim lacks merit, appellate counsel is not ineffective in declining to raise the issue on direct appeal. *See Moore v. Mitchell*, 708 F.3d 760, 776 (6th Cir. 2013) ("[A] petitioner cannot show that appellate counsel was ineffective for failing to raise a claim on appeal if the underlying claim itself lacks merit."); *Burton v. Renico*, 391 F.3d 764, 781-82 (6th Cir. 2004) (where claim of prosecutorial misconduct lacks merit, counsel is not ineffective in declining to raise issue on appeal). As a consequence, Petitioner's fourth habeas ground lacks merit, and the state court's decision to deny relief on this ground constitutes a reasonable application of Supreme Court precedent.

## Conclusion

In light of the foregoing, the Court will dismiss Petitioner's application because it fails to raise a meritorious federal claim.

## Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* at 467. Each issue

must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000).  *Murphy*, 263 F.3d at 467.  Consequently, this Court has examined each of Petitioner's claims under the *Slack* standard.  Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.*  "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."  *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).  In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims.  *Id.*

   The Court finds that reasonable jurists could not conclude that this Court's dismissal of Petitioner's claims was debatable or wrong.  Therefore, the Court will deny Petitioner a certificate of appealability.

   A Judgment and Order consistent with this Opinion will be entered.

Dated: <u>February 4, 2015</u>     <u>/s/ Robert Holmes Bell</u>
               ROBERT HOLMES BELL
               UNITED STATES DISTRICT JUDGE